UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,                         Case No. 1:22-cr-20328

v.                                            Honorable Thomas L. Ludington
                                                     United States District Judge

MAURICE HIXON,

        Defendant.
_____/

**OPINION AND ORDER DENYING DEFENDANT'S MOTION
FOR COMPASSIONATE RELEASE**

In January 2023, Defendant Maurice Hixon pleaded guilty to strangling his significant other. One year later, in the middle of his 46-month sentence, Defendant filed a motion for compassionate release. But Defendant has not shown that he fully exhausted his administrative remedies and, regardless, has not shown any extraordinary and compelling reasons justifying his release. His Motion will be denied accordingly.

I.

In April 2022, a criminal complaint alleged Defendant Maurice Hixon strangled his girlfriend C.B.—an American Indian[1]—on the Isabella Indian Reservation in Isabella County, Michigan. ECF No. 1 at PageID.2–4. In September 2023, Defendant pleaded guilty to one count of assaulting an intimate or dating partner by strangulation, in violation of 18 U.S.C. §§ 113(a)(8), 1151, and 1152. *See* ECF Nos. 23; 24; 29 at PageID.142. Accordingly, on January 10, 2023, this

---

[1] The use of this term stems from historical context, continued use by the U.S. Government, and modern guidance. *See Teaching and Learning about Native Americans: Terminology*, NAT'L MUSEUM OF THE AM. INDIAN, https://americanindian.si.edu/nk360/faq/did-you-know (last visited Nov. 15, 2024) [https://perma.cc/ESX3-L3US]. This term is no way intended to offend or to perpetuate stereotypes.

Court sentenced Defendant to 46 months of imprisonment, followed by two years of supervised release. ECF No. 29 at PageID.142–44. Defendant's projected release date is July 13, 2025. ECF No. 31-2 at PageID.203.

On January 22, 2024, Defendant—while confined at FCI Marianna in Marianna, Florida—filed a *pro se* motion seeking compassionate release under 18 U.S.C. § 3582(c). ECF No. 30. At the time of filing, Defendant had served 21 months of his 46-month sentence. *Id.* at PageID.149; ECF No. 31 at PageID.180.

## II.

A sentence is a final judgment, and district courts generally lack the authority to modify sentences after they are imposed. 18 U.S.C. § 3582(b)–(c). Yet 18 U.S.C § 3582(c)(1)(A) provides an exception to this "rule of finality" in " limited circumstances," known broadly as "compassionate release." *United States v. Lee*, No. 18-20198, 2024 WL 1508826 (E.D. Mich. Apr. 5, 2024) (citing *United States v. Hunter*, 12 F.4th 555, 561, 569 (6th Cir. 2021)). In assessing motions for compassionate release, courts within the Sixth Circuit proceed with a threshold question, followed by a three-tiered analysis.

As a threshold issue, reviewing courts must assess whether the defendant has "satisfied the administrative exhaustion requirement of the First Step Act." *United States v. Allison*, No. 2:21-CR-20436-TGB-EAS, 2024 WL 3012780, at *2 (E.D. Mich. June 14, 2024); *see also* 18 U.S.C. § 3582(c)(1)(A) (noting courts can review defendant-filed motions for compassionate release only once defendant has "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier").

If the defendant exhausted all administrative remedies, reviewing courts proceed to assess whether the defendant has shown both (1) "extraordinary and compelling reasons" which warrant a sentence reduction and (2) that the requested reduction is "consistent with" applicable United States Sentencing Commission policy statements. *See* 18 U.S.C. § 3582(c)(1)(A). If both these criteria are met, reviewing courts (3) turn to the factors promulgated in 18 U.S.C. § 3553(a) to determine whether the sentence reduction is justified under the case's particular circumstances. *Dillon v. United States*, 560 U.S. 817, 827 (2010).

### III.

#### A. Exhaustion

Defendant's Motion for Compassionate Release fails at the first step because he has not shown that he *fully* exhausted his administrative remedies. True, on September 5, 2023, Defendant filed a written request for compassionate release with his warden, averring that his high blood pressure and diabetes increased his risk for severe COVID-19 complications. ECF No. 30 at PageID.174. And true, one week later, the warden denied Defendant's request because—in the warden's view—the medical conditions Defendant cited were insufficiently "extraordinary and compelling reasons" to warrant compassionate release. *Id.* at PageID.175. But the warden's response specifically noted:

> If you are not satisfied with this response . . . you may commence an appeal of this decision via the administrative remedy process by submitting your concerns on the appropriate form (BP-9) within 20 days of the receipt of this response.

*Id.* Defendant does not explain whether he filed this administrative appeal. *See generally* ECF No. 30. But this administrative appeal is necessary for full exhaustion. 18 U.S.C. § 3582(c)(1)(A) (allowing court consideration of a defendant's motion for compassionate release only "after the

- 3 -

defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf")

Notably, as explained in greater detail below, Defendant's January 2024 *Motion* for Compassionate Release cites some medical conditions that Defendant did not include in his September 2023 administrative *request* for compassionate release. *Compare* ECF No. 30 at PageID.174 (discussing Defendant's high blood pressure and diabetes) *with* ECF No. 30 at PageID.152–54 (additionally discussing Defendant's hyperlipidemia, obesity, and sleep apnea). The Government argues this difference proves fatal for exhaustion. ECF No. 31 at PageID.181–82. Not so. District courts "may consider arguments not presented to the BOP." *United States v. Hopkins*, 594 F. Supp. 3d 852, 857 (E.D. Mich. 2022), *aff'd*, No. 22-1170, 2022 WL 18955859 (6th Cir. Oct. 6, 2022). Although a defendant "does not satisfy the exhaustion requirement" when his or her motion for compassionate release does not reference "*any* of the health conditions" referenced in their earlier administrative request, *United States v. Asmar*, 465 F. Supp. 3d 716, 719 (E.D. Mich. 2020) (emphasis added) (noting, in this scenario, the defendant "does not give the BOP an opportunity to act on" defendant's request for compassionate release" before Defendant "brings [the] request to the court"), such is not the case here. Defendants' September 2023 administrative request and January 2024 motion both reference his hypertension and diabetes, and argue that these preexisting conditions increase his COVID-19 risks. *See generally* ECF No. 30; *see also United States v. Johnson*, No. 11-20493, 2021 WL 822495, at *2 (E.D. Mich. Mar. 4, 2021) ("disagree[ing]" with *Asmar* because, despite some different medical conditions, defendant's motion and administrative request were substantially similar such that "[t]he BOP clearly understood [defendant's] request to be seeking compassionate release on the basis of his health . . . because of the COVID-19 pandemic").

In sum, Defendant has not shown full exhaustion—not because of slight differences between his motion for compassionate release and his earlier administrative request seeking the same, but because he has not shown that he exercised his administrative right to appeal.

### B. Extraordinary & Compelling Reasons

But even if Defendant fully exhausted his administrative remedies, his Motion for Compassionate Release would be denied on the merits because he has not shown any "extraordinary and compelling reason" warranting his compassionate release.

Section 1B1.13(b)(1) of the United States Sentencing Guidelines provides, in material part, that extraordinary and compelling reasons exist if:

> (A) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end-of-life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.
>
> (B) The defendant is (i) suffering from a serious physical or medical condition, (ii) suffering from a serious functional or cognitive impairment, or (iii) experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.
>
> (C) The defendant is suffering from a medical condition that requires long-term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death.
>
> (D) The defendant presents the following circumstances—
>
>> (i) the defendant is housed at a correctional facility affected or at imminent risk of being affected by (I) an ongoing outbreak of infectious disease, or (II) an ongoing public health emergency . . .
>>
>> (ii) due to personal health risk factors and custodial status, the defendant is at increased risk of suffering severe medical complications or death as a result of exposure to the ongoing outbreak of infectious disease or the ongoing public health emergency described in clause (i); and

>   (iii) such risk cannot be adequately mitigated in a timely manner.

U.S.S.G. § 1B1.13(b)(1).

Defendant relies on the latter language and suggests he is entitled to compassionate release because his preexisting medical conditions—(1) diabetes; (2) hypertension (high blood pressure); (3) hyperlipidemia (high cholesterol); (4) obesity; and (5) sleep apnea—increase his risk of severe COVID-19 complications. ECF No. 30.

But nearly five years since COVID-19's inception, precedent on this point could not be clearer: purported "extraordinary and compelling" medical circumstances related to COVID-19 complications are significantly—if not wholly—mitigated if the defendant has access to the COVID-19 vaccine. *United States v. Lemons*, 15 F.4th 747, 751 (6th Cir. 2021) (finding defendant's "access to the COVID-19 vaccine substantially undermines his request for a sentence reduction" because "with access to the vaccine, an inmate largely faces the same risks from COVID-19 as those who are not incarcerated"); *see also United States v. Fowler*, No. 21-5769, 2022 WL 35591, at *2 (6th Cir. Jan. 4, 2022); *United States v. Banks*, No. 18-CR-20462-2, 2022 WL 2679417, at *4 (E.D. Mich. July 11, 2022). And "[c]ourts in this circuit . . . consistently refuse[] to find extraordinary and compelling medical circumstances when a defendant *declines* the COVID-19 vaccine." *Banks*, 2022 WL 2679417, at *4 (collecting cases) (emphasis added).

Here, despite his understandable fear of the pandemic and potential complications presented by his preexisting conditions, Defendant had access to the COVID-19 vaccine but refused it on *three* separate occasions. ECF No. 33 at PageID.288, 290, 391 (sealed). Although some of Defendant's underlying conditions, like obesity and diabetes, "can increase the risk of

- 6 -

severe COVID-19" complications,[2] "these risks can be significantly ameliorated by vaccination, and . . . defendants may not perpetuate their own extraordinary and compelling circumstances for compassionate release by declining [the Bureau of Prison's] attempt to protect them." *United States v. Kennedy*, No. 21-2675, 2022 WL 43187, at *2 (6th Cir. Jan. 5, 2022) (internal quotations omitted).

The current COVID-19 conditions in Defendant's place of confinement "provide further support for the conclusion that there are not 'extraordinary and compelling reasons' that warrant" Defendant's release. *Fowler*, 2022 WL 35591, at *2. According to the most recent BOP statistics, out of 1,234 inmates at FCI Marianna, only *one* inmate is currently diagnosed with COVID-19, while 863 inmates have been fully vaccinated. *Inmate COVID-19 Data*, FED. BUREAU OF PRISONS, https://www.bop.gov/about/statistics/statistics_inmate_covid19.jsp (last updated Oct. 9, 2024) (facility code "MNA") [https://perma.cc/7YA3-9J6N].

Moreover, even if Defendant had not repeatedly refused the COVID-19 vaccine, and even if all medical conditions Defendant complains of correspond to increased COVID-19 complications, Defendant has not shown that these conditions cannot be "adequately mitigated in a timely manner." U.S.S.G. § 1B1.13(b)(1)(D)(iii). To the contrary, Defendant's medical record suggests the BOP and the staff at FCI Mariana are adequately and appropriately treating Defendant's medical conditions. Defendant manages his diabetes with insulin. ECF No. 33 at PageID.218 (sealed). Defendant has successfully reduced and stabilized his blood pressure through

---

[2] On the other hand, the other medical conditions Defendant cites—sleep apnea, hypertension, and hyperlipidemia—do not carry an increased susceptibility to COVID-19, nor increase the likelihood that Defendant would experience any significant complications if he contracted COVID-19. *See, e.g.*, *United States v. Elias*, 984 F.3d 516, 521 (6th Cir. 2021) (noting no link between hypertension and COVID complications) *United States v. Woods*, No. 2:03-CR-069, 2020 WL 5805324, at *3 (E.D. Tenn. Sept. 28, 2020) (denying compassionate release to inmate complaining of hyperlipidemia and sleep apnea while incarcerated during the COVID-19 pandemic)

prescribed medication. *See id.* at PageID.217–18 (sealed). And Defendant has lost weight since he began taking prescribed weight loss medication and modifying his diet. *Id.* at PageID.209–12, 217. These facts further mitigate any finding of extraordinary and compassionate release. *See United States v. Gray*, 855 Fed. Appx. 281, 283 (6th Cir. 2021) ( "Given that [defendant] failed to present any evidence that his obesity was poorly managed or had any impact on his health, the district court" properly denied compassionate release."); *United States v. Woods*, No. 2:03-CR-069, 2020 WL 5805324, at *3 (E.D. Tenn. Sept. 28, 2020) (denying compassionate release because defendant was receiving "medical care for his hyperlipidemia").

In sum, even if Defendant fully exhausted his administrative remedies, he has not shown any extraordinary and compelling reasons to justify his compassionate release under 18 U.S.C. § 3582(c). So this Court need not additionally consider whether Defendant's release would be consistent with the 18 U.S.C. § 3553(a) sentencing factors.

**IV.**

Accordingly, it is **ORDERED** that Defendant's Motion for Compassionate Release, ECF No. 30, is **DENIED WITH PREJUDICE**.

Dated: November 27, 2024    s/Thomas L. Ludington
THOMAS L. LUDINGTON
United States District Judge